**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ALLEN R. GERRELL,**

      **Plaintiff,**

**vs.**                                             **Case No. 4:08cv381-SPM/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Allen R. Gerrell, applied for disability insurance benefits. His last date of insured status for disability insurance benefits is December 31, 2008. He must show disability occurring on or before that date.

Plaintiff was 52 years old at the time of the administrative hearing (on November 6, 2007), has an AA degree in criminal justice, and has past relevant work as a Florida Park Service law enforcement ranger and as a gate guard. Plaintiff alleges disability due to degenerative disc disease, carpal tunnel syndrome, swelling in the hands, neck cramps, stress, and depression due to the loss of income. The Administrative Law Judge found that Plaintiff had the residual functional capacity to return to his past relevant work as a gate guard and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber</u> <u>v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

      5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

      The Administrative Law Judge's determinations at step 2 is at issue in this case. At step 2, the issue is whether Plaintiff has shown that he has a condition which has more than "a minimal effect on her ability to: walk, stand, sit, lift, push, pull, reach, carry, or handle, etc." <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521). "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986).

      "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' " <u>Parker v. Bowen</u>, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* <u>Brady v.</u>

Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630

(11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows

only claims based on the most trivial impairments to be rejected.  The claimant's burden

at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986)

(clarifying Brady).  A "severe impairment" is a "de minimis requirement which only

screens out those applicants whose medical problems could 'not possibly' prevent them

from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), *quoting*

Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by

the Supreme Court as a criterion which identifies "at an early stage those claimants

whose medical impairments are so *slight* that it is unlikely they would be found to be

disabled even if their age, education and experience were taken into consideration."

Stratton, 827 F.2d at 1452 n. 9 (emphasis by the court), *quoting* Bowen v. Yuckert, 482

U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

An erroneous finding as to "severe" impairments at step 2 may improperly

foreclose a claimant's "ability to demonstrate the merits of her claim for disability with

respect to her former work activities."  Flynn, 768 F.2d at 1275.  Impairments must be

evaluated in combination at all stages of the analysis.  20 C.F.R. §§ 404.1523 and

416.923; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); Swindle v. Sullivan,

914 F.2d 222, 226 (11th Cir. 1990); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.

1993).  Impairments must be evaluated in combination even though some impairments

are not severe.  Hudson v. Heckler, 755 F.2d 781, 785 and n. 2 (11th Cir. 1985).  The

Eleventh Circuit has "repeatedly held that an ALJ must make specific and well-

articulated findings as to the effect of the combination of impairments when determining

whether an individual is disabled." Davis v. Shalala, 985 F.2d at 534.

On the other hand, even if there is error at step 2, a remand is not needed if error

is harmless because the ALJ considered the limiting effects of the impairment at each

succeeding step, along with other impairments. Riepen v. Commissioner of Social Sec.,

198 Fed.Appx. 414, 415 (6th Cir. Oct 10, 2006) (not selected for publication in the

Federal Reporter, No. 05-2407); Reed-Goss v. Astrue, 291 Fed.Appx. 100, 101 (9th Cir.

Aug 25, 2008) (not selected for publication in the Federal Reporter, No. 07-35477);

Newton v. Astrue, 2008 WL 915923, *10 (N.D. Ga. Apr 01, 2008) (No.

CIV.A.1:06CV1542AJB).

This case also involves the Administrative Law Judge's evaluation of the opinions

of treating and consultative medical sources. The opinion of a claimant's treating

physician must be accorded considerable weight by the Commissioner unless good

cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.

1997). This is so because treating physicians:

> are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a

"detailed, longitudinal picture" of impairments is the length of the treatment relationship,

the frequency of examination, the extent of the knowledge of the treating source as

shown by the extent of examinations and testing, the evidence and explanation

presented by the treating source to support his or her opinion, the consistency of the

opinion with the record as a whole, and whether the treating source is a specialist with respect to the particular medical issues. 20 C.F.R. § 404.1527(d)(2)-(5). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984).[1]

The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and clearly articulated. Phillips v. Barnhart, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." Id. (emphasis added); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1217 (11th Cir. 1991); Critchfield v. Astrue, 2009 WL 635698 (N.D. Fla. Mar 10, 2009) (No. 308cv32-RV/MD). Compare, Harris v. Astrue, 546 F.Supp.2d 1267 (N.D. Fla. 2008) (No. 5:07cv44-RS/EMT) (remanding because the ALJ gave improper reasons to discount the opinion of a treating physician, but did not ignore it).[2] But see,

---

[1] A consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Thus, while a residual functional capacity assessment by a consulting physician can be substantial evidence to support a hypothetical to a vocational expert, Johansen v. Barnhart, 314 F.3d 283, 288 (7th Cir. 2002), there is contrary authority. Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998) ("opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.").

[2] Harris distinguished MacGregor as a case where the ALJ made no finding as to the weight of the opinion of the ALJ, i.e., he ignored the opinion. 786 F.Supp.2d at 1282.

Cole v. Barnhart, 436 F.Supp.2d 1239 (N.D. Ala. 2006) (finding that the opinions of the

treating physician must be accepted as true where the ALJ "did not properly refute

them.").

This circuit finds good cause to afford less weight to the opinion of a treating

physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2)

evidence supported a contrary finding; or (3) treating physician's opinion was conclusory

or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d at

1240-1241; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating

physician's report may be discounted when it is not accompanied by objective medical

evidence or is wholly conclusory.").  *See also*, Crawford v. Commissioner Of Social

Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding good reasons articulated by the

ALJ to discount the treating physician's opinion).

**Legal analysis**[3]

Plaintiff argues that the ALJ's assessment of his limitations as to social

interaction was erroneous.  Doc. 20, p. 14.  This argument focuses upon Plaintiff's

mental impairments.

---

[3] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw, or PDRhealth™, PHYSICIANS DESKTOP REFERENCE, found at http://www.pdrhealth.com/drugs/drugs-index.aspx. Information about medical terms and prescription drugs come from DORLAND'S MEDICAL DICTIONARY FOR HEALTH CONSUMERS, available at:  http://www.mercksource.com (Medical Dictionary link).  Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html.  The pages at these websites are not attached to this report and recommendation as the information is relatively well-settled, the precise definitions are not at issue in this case, and the definitions are not likely to be in dispute.

At step 2, the ALJ determined, *inter alia*, that Plaintiff had the "severe" impairment of a history of alcohol abuse and a history of anxiety. R. 14. Plaintiff contends that the ALJ should have found at step 2 that Plaintiff's adjustment disorder, pain disorder, and major depression were "severe" impairments. Doc. 20, p. 15. In making the step 2 determination, Plaintiff argues that the ALJ erred in failing to give substantial weight to the opinion of Dr. Go, a treating physician, and to give weight to the opinion of Dr. Guilford, a consultative medical source. *Id.* Finally, Plaintiff argues that the ALJ erroneously rejected objective medical evidence in favor of his own observations of Plaintiff at the hearing. *Id.*, at 18. Plaintiff contends that the deficient step 2 determination undermined the ALJ's subsequent determination of Plaintiff's residual functional capacity at step 4. *Id.*, at 15.

The Administrative Law Judge determined that Plaintiff is only "moderately limited" "in his ability to interact appropriately with the general public, supervisors, and co-workers, and to respond appropriately to change in work and routine work settings." R. 17. The ALJ said that "moderate" in this context means "a limitation of function present but the person is still able to perform the task in a satisfactory manner." *Id.* This reasoning depends in large part upon the ALJ's rejection of the opinions of a treating physician, Dr. Go, and a consulting psychologist, Dr. Guilford, who expressed opinions that Plaintiff was more limited in his social interactions.

The Administrative Law Judge discussed at length the findings of Dr. Marie Go, the Veteran's Administration Medical Center psychiatrist, who treated Plaintiff from January 26, 2004, through August 13, 2007. R. 18-20. On January 26, 2004, Plaintiff told Dr. Go that his chief complaint was pain, that he had thought he was going to "see

the Orthopedic doctor."  R. 453.  Plaintiff said he was feeling depressed because he had

lost his job as a park ranger, a job he had held for 14 years.  R. 454.  He said that he

was terminated for misuse of his computer, buying and selling on the job.  *Id*.  His said

that his "bills were mounting and this is a big source of stress."  *Id*.  He said that he had

been "somewhat anxious all his life but untreated and it did not really interfere with him."

*Id*.  His private physician had prescribed Paxil,[4] and Plaintiff said that "the Paxil has

helped with depression."  *Id*.  Plaintiff was still drinking five beers a day over a 12 hour

period.  *Id*.  Dr. Go found that Plaintiff was alert, oriented in three spheres, friendly,

cooperative, had organized thought processes, but she found that Plaintiff had a

nervous laugh, an anxious mood, and he fidgeted a lot.  R. 455.  Her diagnosis was

mood disorder due to chronic pain with depressive features.  *Id*.  On Axis V[5] she

assigned a GAF score of 61, indicating that Plaintiff had some problems, but generally

was functioning pretty well.[6]  *Id*.  She advised Plaintiff as to the depressive effects of

alcohol, and advised against the use of alcohol, caffeine, or nicotine.  *Id*.  It was also

---

[4] Paxil relieves a variety of emotional problems.  It can be prescribed for serious, continuing depression that interferes with your ability to function. . . .  Paxil is also used to treat obsessive-compulsive disorder (OCD), panic disorder, generalized anxiety disorder, social anxiety disorder, and post-traumatic stress disorder. . . .  PDRhealth™, PHYSICIANS DESKTOP REFERENCE

[5] Axis V of the DSM-IV Multiaxial System and the meaning of the GAF scores is explained at:  http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

[6] A GAF score of 61-70 indicates: "Some mild symptoms ( e.g., depressed mood and mild insomnia ) OR some difficulty in social occupational, or school functioning ( e.g., occasional truancy or theft within the household ), but generally functioning pretty well, has some meaningful interpersonal relationships."  *See* http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

noted that Plaintiff had had a mass on his lung for several years, but was not interested in quitting smoking.  R. 455-456.

On February 25, 2004, Plaintiff returned to Dr. Go.  R. 452.  He told Dr. Go that Paxil was helping his mood and his hand tremors had "practically gone."  *Id.*  Dr. Go thought that Plaintiff on that day was "more energetic and optimistic."  *Id.*  He had cut down his consumption of beer from five to one a day.  *Id.*  He was still smoking.  *Id.*  On examination, Plaintiff was found to be alert, oriented in three spheres.  *Id.*  His affect was congruent, his though process was organized, and his judgment and insight were intact.  *Id.*  Dr. Go assigned a GAF score of 68.  R. 453.

On April 12, 2004, Plaintiff reported to Dr. Go that he had had teeth extracted, causing a lot of pain, and for the past week he had been "drinking daily."  R. 444.  A GAF score of 65 was assigned.  R. 445.

On May 12, 2004, Plaintiff told Dr. Go that he continued to drink two to six beers daily.  R. 442.  She noted that Plaintiff was "very firm in his belief that he has no alcohol problem."  *Id.*  Plaintiff told Dr. Go that Paxil had been useful to level out his mood, but lately the benefits were on the wane.  R. 442-443.  Dr. Go said that Plaintiff's wife had a diagnosis of fibromyalgia, reportedly took a lot of medications, "and just sits there."  R. 443.  She said that Plaintiff planned to be in "a reenactment event this weekend."  *Id.*  A GAF score of 65 was assigned.  *Id.*

On August 24, 2004, Plaintiff returned to Dr. Go.  R. 438.  Plaintiff reported that he had not had an alcoholic drink since the last visit, partly due to his finances.  *Id.*  Plaintiff had not been able to find a job, and had been subsisting on selling his belongings.  *Id.*  Plaintiff again reported that Paxil was effective for his mood.  *Id.*  He

had been playing music for nursing homes with an instrument modified for his arm and hand pain. *Id.* His examination was normal.[7] *Id.* His GAF score was 65. R. 439.

On September 20, 2004, Plaintiff was seen by Dr. Go. R. 433. She noted that Plaintiff was "otherwise stable as long as he takes the Paxil." *Id.* He reported good days and bad days. *Id.* Dr. Go said: "His physical condition is his primary problem at this time, both wrists have pain and he has not been able to work due to that." *Id.* His examination was again normal. R. 434. Plaintiff's alcohol abuse was deemed to be in remission. *Id.* A GAF score of 65 was assigned. *Id.*

On December 8, 2004, Plaintiff was again treated by Dr. Go. R. 423. It was reported that the only income he and his wife had was her disability income. *Id.* Dr. Go's findings after examination were normal. *Id.* Dr. Go entered a diagnosis of mood disorder due to general medical condition (chronic pain) with depressive features. *Id.* A GAF of 60 was assigned. R. 424.

For the year 2005, the Administrative Law Judge determined:

> Dr. Go continued to see the claimant approximately every four months in 2005. The claimant reported continued effectiveness of the Paxil in controlling his mood. During this time, the claimant's GAF score ranged from 55-60. On October 6, 2005, the claimant reported he was only taking half the daily prescribed dosage of Paxil. He complained of memory and concentration problems. Dr. Go found the claimant's judgment and insight were intact and his thought processes organized. She noted a GAF score of 55.

R. 19 (citations omitted). These findings are supported by substantial evidence in the record. R. 420-421, 403-404, 372-373. In addition, on January 10, 2005, Plaintiff said

---

[7] She found that Plaintiff was "alert, oriented x 3, mood euthymic, affect congruent, thought process organized, denies S/H ideations, no delusions, no hallucinations, judgment and insight intact." R. 434.

he drank three to four beers a day, and Dr. Go's findings from her examination of Plaintiff were normal.  R. 420-421, 398-399.  On April 4, 2005, Plaintiff had cut back to one to three beers a week.  R. 403.  On July 8, 2005, he reported that he had not had any alcohol in the past three months and had given it up.  R. 398.  On that day Plaintiff's mood was anxious about his financial situation, and he was upset about the chronic pain in his neck.  *Id.*  A GAF of 55 was assigned.  R. 399.  On October 6, 2005, Plaintiff said he was taking 30 mg of Paxil "most of the time," and the prescription was for 60 mg.  R. 372.  Plaintiff complained of memory and concentration problems.  *Id.*  A GAF score of 55 was assigned.  R. 373.  Plaintiff's wife suggested that he be prescribed Prozac.  R. 372.  He tried Prozac, but did not do well, and on October 20, 2005, Paxil was again prescribed.  R. 371.

The Administrative Law Judge next discussed Dr. Go's findings on Plaintiff's next visit, April 4, 2007.  R. 20.  Plaintiff told Dr. Go that his wife had left him in January and he felt that this was due to financial problems.  R. 595.  Plaintiff said that he had not been able to work for several years due to chronic pain in his hands, arms, legs, and "his emotional state of late has made things worse."  *Id.*  He reported that he had stopped drinking alcohol in July, 2005, and had no intention of doing that again.  *Id.* Plaintiff was compliant with his medications, and he felt that they were helping.  *Id.*  Dr. Go said that Plaintiff was "not as agitated or explosive when he is taking Paxil."  *Id.*  His mental status examination noted normal findings with mood depressed.  *Id.*  A GAF score of 50 was assigned.[8]  *Id.*  Dr. Go also completed a "mental functional

_____

[8] A GAF score of 41-50 indicates: "Severe symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting ) OR any serious impairment in social,

questionnaire" on that date. R. 542-546. She found that Plaintiff was "markedly" limited

in social interaction (that is, his ability to accept instructions from supervisors, to work in

coordination or proximity to others without distracting them, to respond appropriately to

co-workers, and to relate properly to the general public). R. 543. A "marked" limitation

was defined as an impairment that "seriously affects ability to function in any work

setting." *Id.* Dr. Go found that Plaintiff had "extreme" limitation ("no useful ability to

function in any work setting") in abilities to sustain concentration, persistence, and pace.

R. 544. There, Dr. Go commented that Plaintiff could not keep track of days and

personal hygiene. *Id.* Dr. Go said that Plaintiff's abilities to respond appropriately to

changes in a work setting, to remember locations and workday procedures, to tolerate

customary work pressure, to behave reliably and in an emotionally stable manner, to

remember simple instructions, and to be aware of normal work hazards, were extremely

limited. R. 545. Dr. Go said:

> Patient has deteriorated in his emotional stability and is not able to adapt
> to a work setting. His cognitive ability (memory, concentration, attention
> span) has gotten worse and would not support him in a work setting.

R. 546.

On August 13, 2007, as noted by the ALJ, Dr. Go again saw Plaintiff. R. 20.

Plaintiff had, on his own, adjusted his medications, stopping Buspar and cutting back on

Paxil to 30 mg, and Plaintiff said that he was feeling better. *Id.*; R. 577. He said he was

more depressed taking antidepressants. *Id.* Dr. Go said that he was still "very

---

occupational or school functioning ( e,g., no friends, unable to keep a job )." *See*
http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.PauseKey (Key: Enter!)
jsp.

depressed." *Id.* His father and his dog had recently died, and Dr. Go noted that he had "tremendous financial stressors as well as pain issues." *Id.* Dr. Go's findings on examination were normal. R. 576. A GAF score of 50 was assigned. *Id.* This was the last medical finding by Dr. Go.

The ALJ also discussed the consultative "general personality evaluation" on August 22, 2007, by Marie Hume Guilford, Ph.D., and accurately summarized Dr. Guilford's findings. R. 21. Plaintiff was then taking Paxil, but had reduced the dosage to 20 mg. R. 561. He said he had been dealing with a lot of stress at that time. *Id.* His wife left him in January, his hunting dog had died, and then his father had died. *Id.* He said he had taken a look at the medications he was on, stopped taking morphine, reduced the dosage of Paxil, and said: "I ain't got nothing wrong. I'm doing great." *Id.* He said that he no longer drank alcohol, that he could not afford it, and that he "told the VA doctor I liked to drink socially and she labeled me a drinker." *Id.* Plaintiff reported that he lived by himself, spends his day watching television. *Id.* He said that he washes dishes every few days, and it takes several days to complete a chore, like vacuuming the floor. *Id.* He said that he had a friend who helped him twice a week with household work. *Id.* He reported "limited social activities at the present time." *Id.* He said that he had been very involved with re-enactment of Civil War battles. *Id.* He also used to do a lot of wood working, but no longer engaged in these activities. *Id.* He said that his ability to complete short-term tasks was compromised. *Id.*

Dr. Guilford thought that Plaintiff had "only minor difficulty dealing with the mental demands associated with work," and found that his "problems do not significantly impair his ability to follow simple one or two-step instructions." R. 562. She said that he

"sometimes has problems interacting with others," but "can withstand the stress of a routine workday and adapt to change." *Id.* Dr. Guilford found that Plaintiff's grooming and hygiene were adequate, and that he was "grumpy and complaining but cooperative." R. 559. She said he was "actually pleasant to talk to once he started talking about history." R. 562. She found his attitude to be "within normal limits." *Id.* She found, however, that: "He could clearly have trouble interacting with others, especially people who do not know him. He also appears to have little patience for 'fools.' " R. 562.

Dr. Guilford found that Plaintiff's mood was only "mildly depressed." R. 562. She found him to be alert and fully aware. *Id.* She said: "He displayed no signs of anxiety. His affect was within normal limits." *Id.* She thought that he had adequate communication and social skills. *Id.* His thought processes were clear and organized. *Id.* She found that Plaintiff was functioning in the average range of intelligence based upon his education, reasoning, and vocabulary. *Id.* She found his "attention and concentration were adequate to follow the interview." *Id.* She also found:

> His recent and remote memory abilities were generally intact. He demonstrated excellent recall of the sequences of events and specific details of his history. He appears to have a very good memory for details, including dates.

*Id.*

Dr. Guilford administered the Minnesota Multiphasic Personality Inventory-2 (MMPI II) "as a screening for psychopathology." R. 563. She said that his test "profile suggests the likely diagnosis is a depressive disorder." *Id.* She thought that his "profile

must be interpreted cautiously due to his very high symptom endorsement." *Id.* She

said that individuals with that profile:

> do not experience disabling anxiety but do report feeling nervous, tense,
> worried, sad, and depressed. They usually express somatic symptoms
> such as fatigue, exhaustion, physical weakness, or GI complaints. These
> individuals tend to lack interest and involvement in life. . . . Similar
> individuals tend to not be overly responsive to psychotherapy as they
> appear to lack introspective ability. They lack insight and resist
> psychological formulations of problems. Such individuals will tolerate a
> great deal of unhappiness without seeking behavioral change.

*Id.* Dr. Guilford's prognosis was guarded. *Id.* She noted that Plaintiff "complains of

physical problems as his primary disabling condition. He reports that he would work if

he could." *Id.*

Dr. Guilford filled out a form entitled "Medical Source Statement of Ability to Do

Work-Related Activities (Mental)." R. 564. She found that Plaintiff had only mild

limitations (slight limitations, but generally can function well) in ability to understand and

remember simple instructions, carry out simple instructions, make judgments on simple

work-related decisions, and understand, remember, make judgments, and carry out

complex instructions. *Id.* She wrote that these mild limitations were the result of "major

depression with some concentration problems." *Id.* Dr. Guilford found Plaintiff to

markedly limited (substantial loss of ability to function effectively) in his ability to interact

appropriately with the public, a supervisor, or with co-workers, or to respond

appropriately to usual work situations. R. 565. She commented that Plaintiff was "very

angry," and had difficulty managing his anger with depression. *Id.* She said that

Plaintiff "is capable of managing anger but with the depression [is] less inclined to." *Id.*

The Administrative Law Judge discounted the April 4, 2007, opinion of Dr. Go as

to Plaintiff's residual functional mental capacity. He explained:

> Dr. Go's assessment of the claimant's mental ability to do work related
> activities is wholly conclusory. She fails to state or identify any medical,
> psychological or clinical findings to support her conclusions of marked or
> extreme limitations, instead, generally noting that the claimant could not
> keep track of days and personal hygiene, had "deteriorated in his
> emotional stability" and was "not able to adapt to a work setting, his
> cognitive ability (memory[,] concentration, attention span) have gotten
> worse and would not support him in a work setting." No basis was
> provided for such statements and no basis exists in Dr. Go's treatment
> records. Prior to April 2007, Dr. Go found the claimant's mood was stable
> when he was compliant with taking his medication, and the claimant
> repeatedly reported the effectiveness of Paxil in controlling his mood. Dr.
> Go routinely observed the claimant as being alert and oriented with
> organized thought processes. He was never observed as being unable to
> keep track of days or unkempt. Indeed, from January 2004 through
> October 2006 (the claimant's last session with Dr. Go prior to April 4,
> 2007), the claimant's GAF score ranged from 55 to 68 – scores which are
> not indicative of a person so deteriorated that he or she would be unable
> to work in any work setting as Dr. Go found. Moreover, the claimant was
> given such GAF scores by Dr. Go even when he reported being
> aggravated "with everybody" and had experienced stressor situations such
> as his dog dying and having to sell his belongings. The claimant's April 4,
> 2007[,] session did not reveal any significant change in circumstance or
> behavior to warrant a GAF score of 50. To the contrary, Dr. Go observed
> the claimant was medication compliant and had reported the medication
> was of benefit. Moreover, she observed that the claimant was not as
> agitated or explosive when he was taking the prescribed Paxil and
> scheduled, as she routinely did, a return appointment in 4 months. There
> is no basis or finding in Dr. Go's treatment records to bolster or otherwise
> explain the sudden GAF score of 50 – other than she was providing a
> medical source statement finding the claimant mentally unable to work.
> Moreover, such finding is contrary to Dr. Go's prior observation that the
> claimant's primary limitation was physical and not mental. It is also
> contrary to the findings of Dr. Guilford who more recently examined the
> claimant.

R. 22 (citations omitted). For these reasons, the ALJ did not give substantial or

controlling weight to Dr. Go's findings and rejected her conclusion that Plaintiff is

mentally unable to work in a competitive workplace. *Id.*

The ALJ likewise rejected the finding of Dr. Guilford that Plaintiff's anger would markedly limit his ability to interact with others.  R. 23.  He found this opinion to be contradicted by Dr. Guilford's concomitant findings that Plaintiff was able to withstand the stress of a routine workday, could adapt to change, and would have only minor difficulty in dealing with the mental demands of work.  R. 23.  He further noted that "the claimant's presentation at the hearing did not evidence an inability to deal with people to the extent he would be markedly impaired."  *Id.*

As to this last finding, in the Eleventh Circuit, it is not appropriate for the Administrative Law Judge, who is not a medical expert, subjectively to arrive at an index of traits which he expects the claimant to manifest at the hearing, and then to deny the claim when such traits are not observed.  Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).  The Eleventh Circuit has termed this "sit and squirm jurisprudence," and forbids that this method of analysis be used.  McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988); Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987); Wilson v. Heckler, 734 F.2d at 517.  It is proper, however, for the ALJ to consider the claimant's demeanor and appearance during the hearing as long as this is not in lieu of consideration of the medical evidence presented.  Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985); Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).  "We do not accept an ALJ's mere reliance on his observation of a claimant during a hearing as the only basis upon which to reject a claimant's reference to pain."  Norris, 760 F.2d at 1158.

In this case, the Administrative Law Judge made this comment about what he saw during the hearing as only some evidence to support his reasoning, and he did so

after a very thorough review of the medical evidence. The comment was not the only basis for his ultimate determination. Thus, the comment was not error.

Otherwise, the ALJ followed this Circuit's law governing the weight to be accorded the opinion of treating and consultative medical sources. His reasons for discounting Dr. Go's April 4, 2007, opinion are supported by substantial evidence in the record, which the ALJ fully discussed. All of the evidence from Dr. Go prior to April 4, 2007, indicated that Plaintiff obtained good benefits from taking Paxil, had normal results on examination, was cooperative, alert, and had only mild limitations. The stressors that Plaintiff suffered (loss of his wife, father, and dog) at about the time of the April 4, 2007, opinion could reasonably have been expected to have been temporary.

Likewise, the ALJ gave sufficient reasons, supported by substantial evidence in the record, to discount Dr. Guilford's conclusions about Plaintiff's ability to work with a supervisor or others on a job. As the ALJ pointed out, while Dr. Guilford said that Plaintiff's anger would markedly limit his ability to interact with others, she also found that Plaintiff was able to withstand the stress of a routine workday, could adapt to change, and would have only minor difficulty in dealing with the mental demands of work. R. 23, 562. Further, Dr. Guilford found that Plaintiff's grooming and hygiene were adequate, although Plaintiff was "grumpy," he was cooperative, R. 559, and was "actually pleasant to talk to once he started talking about history." R. 562. She found his attitude to be "within normal limits." *Id.* Although she said that Plaintiff "could clearly have trouble interacting with others, especially people who do not know him," R. 562, she also found that he was alert, fully aware, displayed no signs of anxiety, had adequate communication and social skills, and his recent and remote memory abilities

were generally intact. *Id*. This court's job is not to substitute its judgment for that of the ALJ, but to determine whether the ALJ's decision was based upon substantial evidence. Here, the ALJ's resolution of these somewhat inconsistent findings was reasonable and based upon substantial evidence.

Although it may have been error at step 2 to not find that that Plaintiff's adjustment disorder, pain disorder, and major depression were "severe" impairments, given the very light burden of proof at that step, this assumed error was harmless. The ALJ fully considered the evidence of these mental impairments at step 4 in reaching his residual functional capacity determination. The central issue was whether Plaintiff suffers marked limitations in social interactions, especially with supervisors. The ALJ's rejection of the opinions of Dr. Go and Dr. Guilford was fully explained and supported by substantial evidence in the record.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and were based upon substantial evidence in the record. The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 19, 2009.

<u>s/ William C. Sherrill, Jr.</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.